**FOR PUBLICATION**

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------------X

In re:                                                       :
                                                             :
LEHMAN BROTHERS INC.                                         :        Case No. 08-01420 (SCC) SIPA
                                                             :
-------------------------------------------------------------X
THE LEHMAN BROTHERS INC. DEFERRED                            :
COMPENSATION DEFENSE STEERING                                :
COMMITTEE as Attorney in Fact for those                      :        Adv. Pro. No. 19-01368 (SCC)
Specified,                                                   :
                                                             :
                            Plaintiffs,                      :
                                                             :
          -- against --                                      :
                                                             :
JAMES W. GIDDENS, as Trustee for the SIPA                    :
Liquidation of Lehman Brothers Inc.,                         :
                                                             :
                            Defendant.                       :
-------------------------------------------------------------X

**MEMORANDUM OPINION AND ORDER (I) GRANTING
TRUSTEE'S MOTION TO DISMISS AND (II) DENYING
ESEP COMMITTEE'S MOTION FOR SUMMARY JUDGMENT**

**A P P E A R A N C E S :**

SCAROLA ZUBATOV SCHAFFZIN PLLC
1700 Broadway, 41st Floor
New York, New York 10019
          Richard J.J. Scarola, Esq.
          Alexander Zubatov, Esq.
                    Of Counsel

*Attorneys for The Lehman Brothers Inc. Deferred Compensation
Defense Steering Committee as Attorney-in-Fact for Those Specified*

HUGHES HUBBARD & REED LLP
One Battery Park Plaza
New York, New York 10004-1482
          Nicolas Swerdloff, Esq.
          Gregory C. Farrell, Esq.
                    Of Counsel

*Attorneys for James W. Giddens, Trustee for the SIPA Liquidation
of Lehman Brothers Inc.*

**SHELLEY C. CHAPMAN**
**United States Bankruptcy Judge**

Before the Court is the *Motion to Dismiss Adversary Proceeding*, dated November 6,

2019 ("Motion to Dismiss") (Doc. No. 5)[1] filed by the defendant, James W. Giddens, as Trustee

for the liquidation of Lehman Brothers Inc. ("Trustee" or "Defendant") under the Securities

Investor Protection Act of 1970 ("SIPA"), and the *Cross Motion for Summary Judgment and*

*Opposition to Motion to Dismiss*, dated December 23, 2019 ("Motion for Summary Judgment")

(Doc. No. 10) filed by the plaintiff, the Lehman Brothers Inc. Deferred Compensation Defense

Steering Committee as Attorney-in-Fact for Those Specified ("ESEP Committee" or

"Plaintiff").[2]  A hearing was held on both motions on February 19, 2020, and the matter was

taken under advisement.

Before diving into the legal issues presented by the Motion to Dismiss and the Motion for

Summary Judgment, the Court believes it would be useful to describe in simple terms the history

of the ESEP Committee's actions in the SIPA proceeding of Lehman Brothers Inc. ("LBI") over

the last decade.  With the goal of recovering approximately $270 million of deferred

compensation directed to an unfunded "top hat" plan prepetition by the claimants who comprise

the ESEP Committee (collectively, the "Claimants") and in an effort to recover such deferred

compensation at a higher claim priority in the SIPA proceeding than that to which the Claimants

would be legally entitled, the ESEP Committee has filed multiple motions in this Court, has

---

[1]      Herein, "Doc. No." refers to documents filed in Adversary Proceeding No. 19-01368, and "Bankr. Doc.
No." refers to documents filed in the Lehman Brothers Inc. SIPA liquidation proceeding, Case No. 08-01420.
[2]      The Plaintiff has also filed its *Statement of Undisputed Facts*, dated December 23, 2019 ("Statement of
Undisputed Facts") (Doc. No. 11) and the *Declaration of Richard J.J. Scarola in Opposition to the Trustee's Motion
to Dismiss and in Support of Cross-Motion for Summary Judgment*, dated December 23, 2019 ("Scarola Decl.")
(Doc. No. 10-2), in support of its Motion for Summary Judgment.  The Defendant has also submitted the *Trustee's
Reply in Support of His Motion to Dismiss and Opposition to Claimants' Cross-Motion for Summary Judgment*,
dated January 21, 2020 ("Reply") (Doc. No. 17), and *Trustee's Response to Claimants' Local Bankruptcy Rule
7056-1 Statement of Facts as to Which There is No Dispute*, dated January 21, 2020 ("Response to Statement of
Undisputed Facts") (Doc. No. 18).

failed to prevail on each motion, and has appealed each and every time it has not prevailed. Over the past six years, the ESEP Committee's litigation has garnered multiple decisions from this Court, from three District Court judges, and from two panels of judges on the United States Court of Appeals for the Second Circuit. Judges from all three courts have determined that the ESEP Agreements (as defined below) to which each of the Claimants is a party provide that the right to payment of the ESEP deferred compensation is subordinated to the claims of general unsecured creditors of the LBI estate.

Now, for the first time since the Claimants filed their claims against LBI over a decade ago, the ESEP Committee asserts a new and novel argument that is entirely at odds with every argument it has heretofore asserted: that section 541(b)(7) of the Bankruptcy Code excludes the ESEP deferred compensation from property of the LBI estate. The Complaint (as defined below) filed by the ESEP Committee in the instant Adversary Proceeding and its Motion for Summary Judgment are entirely without merit. It is time for this litigation odyssey to end. Simply put, enough is enough.

Even accepting as true all assertions set forth in the Complaint and drawing all reasonable inferences in the ESEP Committee's favor, the Court concludes that ESEP Committee has failed to state a claim upon which relief can be granted. For the reasons set forth herein, the Trustee's Motion to Dismiss is granted and the ESEP Committee's Motion for Summary Judgment is denied. The Court's decision follows.

## BACKGROUND

The question before the Court is twofold. First, the Claimants seek a determination that ESEP funds that are part of the LBI estate are, in fact, not property of the estate, but property of the Claimants. As statutory support for their assertion in this regard, the Claimants cite to section 541(b)(7) of the Bankruptcy Code, which excludes from property of the estate funds that

are either "withheld by an employer from the wages of employees for payment as contribution" or "received by an employer from employees for payment as contributions" to "an employee benefit plan that is subject to title I" of the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 et seq. ("ERISA").  Second, the Court must consider whether, even if Claimants' argument were to prevail, they are barred from bringing this proceeding due to the running of the applicable statute of limitations or by the equitable doctrine of laches.

In order to address the matters before the Court, it is necessary to review the lengthy history of the litigation between the Claimants and the Trustee.

## I.    The ESEP Agreements

The Claimants are certain former highly compensated executives and select employees who participated in a voluntary deferred compensation plan during the period of their employment by LBI and its predecessors, as applicable, prior to the commencement of LBI's SIPA proceeding on September 19, 2008.  The deferred compensation plan, known as the Executive and Select Employee Plan (the "ESEP"), is governed by certain contracts (the "ESEP Agreements").[3]

The ESEP is what is known as a "top hat" plan, and as such, is exempt from many of the protections of ERISA.[4]  The ESEP is an unfunded plan.  The amounts directed by Claimants to the plan were, by agreement, not set aside in trust for the Claimants' sole benefit or kept separate from the assets of LBI.  Instead, the ESEP Agreements specifically required that the amounts of

---

[3]    A legible example can be found attached to the *Declaration of Richard J.J. Scarola in Support of Motion to Compel*, Ex. A, dated June 6, 2014 (Bankr. Doc. No. 9069), and it is from this document that the citations herein are taken. The ESEP Agreements are incorporated by reference into the Complaint (as defined below), and therefore may be considered when deciding the Motion to Dismiss.  *See, e.g.*, *Int'l Audiotext Network, Inc. v. American Tel. & Tel. Co.*, 62 F.3d 69, 71–72 (2d Cir. 1995).

[4]    *See* Appellant's Brief, ECF Doc. No. 11, p. 4, *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, No. 17 Civ. 06246 (AT) (S.D.N.Y.) (noting that the ESEP "did not have all of ERISA's protections . . . because it was what is known as a 'Top Hat' plan exempt from some of those protections").

compensation voluntarily deferred by Claimants be part of the capital of LBI and available to the

creditors of LBI.  The ESEP Agreements expressly state:

> The amounts credited to the deferred compensation account
> hereunder shall be dealt with in all respects as capital of [LBI],
> shall be subject to the risks of the business, and may be deposited
> in an account or accounts in [LBI]'s name in any bank or trust
> company.

(ESEP Agreements § 9(i).)  Under the ESEP Agreements, the Claimants deferred compensation

in exchange for a contractual right to receive future payments based on the deferred amounts.  In

so doing, Claimants were allowed to defer income tax that would otherwise be owed for the

deferred amounts, and they received a guaranteed compound interest rate of approximately

eleven percent, which accrued on a tax-deferred basis.  (*Id*. § 2.)

This Court has previously found and determined that under the ESEP Agreements,

Claimants' rights to payment are subordinate to the claims of general creditors of LBI.  *See*

*Giddens v. 344 Individuals (In re Lehman Bros. Inc.)*, 574 B.R. 52 (Bankr. S.D.N.Y. 2017),

*aff'd*, No. 17 Civ. 6246 (AT), 2018 WL 10454936 (S.D.N.Y. Sept. 26, 2018), *aff'd sub nom.*,

792 F. App'x 16 (2d Cir. 2019).  Section 9(d) of the ESEP Agreements provides that each of the

Claimants:

> irrevocably agrees that the obligations of [LBI] hereunder with
> respect to the payment of the amounts credited to [Claimant's]
> deferred compensation account are and shall be subordinate in
> right of payment and subject to the prior payment or provision for
> payment in full of all claims of all other present and future
> creditors of [LBI] whose claims are not similarly subordinated . . . .

(*Id*. § 9(d).)  Likewise, each of the Claimants agreed that in the event of a SIPA liquidation of

LBI, the Claimant:

> shall not be entitled to participate or share, ratably or otherwise, in
> the distribution of the assets of [LBI] until all claims of all other
> present and future creditors of [LBI], whose claims are senior to

claims arising under [the ESEP Agreements], have been fully
satisfied or provision has been made therefor.

(*Id*.)  Each Claimant also agreed that any payments made to him or her under the ESEP

Agreements were "unsecured subordinated obligations of [LBI] only," and that he or she is "only

a general subordinated creditor of [LBI] in that respect."  (*Id*. § 5(d).)

## II.    The LBI SIPA Proceeding and the Claims

On September 19, 2008 (the "Filing Date"), the liquidation of LBI under SIPA was

commenced, and the Trustee was appointed.  On November 7, 2008, the Court entered an order

establishing a claims bar date of June 1, 2009.  (Bankr. Doc. No. 241.)

Each of the Claimants filed timely claims against LBI (the "Claims").  The large majority

of the Claims asserted that they were secured based on, among other things, section 541(b)(7).

(*See, e.g.*, Proof of Claim No. 7001872, Bankr. Doc. No. 14131, Ex. D.)

On November 15, 2012, the Court approved procedures for the Trustee to file omnibus

objections to proofs of claim. (Bankr. Doc. No. 5441).  Between July 19, 2013 and January 28,

2014, the Trustee filed omnibus objections to the Claims, seeking an order subordinating such

claims to all general creditor claims of LBI (Bankr. Doc. Nos. 6847, 6865, 6866, 7264, 7388,

8153, collectively, the "Omnibus Objections.")

## III.   The Subordination Proceeding

Certain of the Claimants opposed the Omnibus Objections on procedural grounds,

asserting that the relief sought required an adversary proceeding.  On February 6, 2014, the

Trustee filed a motion to convert the Omnibus Objections to a consolidated adversary

proceeding.  (Bankr. Doc. No. 8196.)  Claimants opposed the motion, arguing that the Trustee

was required to file a summons and complaint.  (Bankr. Doc. Nos. 8280, 8282.)  After a hearing

held on February 27, 2014, this Court entered an order (Bankr. Doc. No. 8576) overruling

Claimants' objection and granting the motion to convert the Omnibus Objections to a single, consolidated adversary proceeding (the "Subordination Proceeding").

### A.  Motion to Compel Arbitration

On June 6, 2014, Claimants moved to compel arbitration of the Subordination Proceeding.  (Bankr. Doc. No. 9068, the "Motion to Compel Arbitration.")  On August 11, 2014, this Court entered an order denying the Motion to Compel Arbitration.  (Bankr. Doc. No. 9617.) Claimants appealed.

On September 30, 2015, the District Court affirmed this Court's denial of the Motion to Compel Arbitration.  *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, No. 14 Civ. 7643 (ER), 2015 WL 5729645 (S.D.N.Y. Sept. 30, 2015).  The Claimants further appealed, and, on October 6, 2016, the Second Circuit affirmed the decisions of the lower courts.  *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, 663 F. App'x 65 (2d Cir. 2016).

### B.  Motion to Withdraw the Reference

On November 6, 2014, while the appeal of the Motion to Compel Arbitration was pending, Claimants filed a motion to withdraw the reference.  Motion to Withdraw the Reference, ECF Doc. No. 1, *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, No. 14 Civ. 8825 (ER) (S.D.N.Y.).  The District Court denied the motion on December 1, 2016.  (*Id*., ECF Doc. No. 26.)

### C.  Cross-Motions for Summary Judgment

On January 13, 2017, the Trustee moved for summary judgment in the Subordination Proceeding.  (Bankr. Doc. No. 14128.)  Claimants opposed the Trustee's motion and cross-moved for summary judgment in their favor, seeking a determination that the Claims were not subordinated.  (Bankr. Doc. Nos. 14192, 14196.)  On July 13, 2017, this Court issued a decision, finding that the ESEP Agreements plainly and unambiguously provide that the Claims are

7

subordinate to claims of general creditors of LBI and therefore must be classified as subordinated claims. (*Giddens v. 344 Individuals (In re Lehman Bros. Inc.)*, 574 B.R. 52 (Bankr. S.D.N.Y. 2017) (the "Subordination Decision").

Claimants appealed from the Subordination Decision. The District Court affirmed on September 26, 2018, agreeing with this Court that the plain language of the ESEP Agreements requires the subordination of the Claimants' claims. *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, No. 17 Civ. 6246 (AT), 2018 WL 10454936 (S.D.N.Y. Sept. 26, 2018).

Claimants further appealed to the Second Circuit. On November 1, 2019, the Second Circuit affirmed the judgment of the District Court, holding that it had properly affirmed the Subordination Decision's holding that the Claims are properly subordinated to the claims of LBI's general creditors. *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, 792 F. App'x 16 (2d Cir. 2019).

## IV.    The Secured Classification Motion

On September 2, 2015, while the Subordination Proceeding was still in its early stages, the Trustee filed a separate objection to the Claims' assertion of secured status (Bankr. Doc. Nos. 12655, 12656, the "Secured Classification Motion.") The Claims were filed as secured claims, which required the Trustee to maintain a reserve for the Claims at 100 cents on the dollar, limiting the funds available for interim distributions to holders of allowed, undisputed claims while objections to the Claims remained pending. By the Secured Classification Motion, the Trustee sought a determination that the Claims were unsecured.

The ESEP Agreements expressly state that each Claimant's right to payment is "unsecured." (ESEP Agreement § 5(d).) By their response to the Secured Classification Motion (Bankr. Doc. No. 12832), Claimants argued that, notwithstanding this contractual agreement, the Claims were secured pursuant to section 541(b)(7), which excludes from property of the estate

funds that are either "withheld by an employer from the wages of employees for payment as contributions" or "received by an employer from employees for payment as contributions" to "an employee benefit plan that is subject to title I" of ERISA.  11 U.S.C. § 541(b)(7).

A hearing on the Secured Classification Motion was held on November 4, 2015.  This Court granted the Trustee's objection to the Claimants' assertion of secured status, reclassified the Claims as general unsecured non-priority creditor claims, and preserved the Trustee's right to further object to the Claims.  (Bankr. Doc. No. 13053, the "Reclassification Order.")  In response to Claimants' argument that section 541(b)(7) gave their claims secured status, this Court noted that "[i]n order to have a secured claim, you have to have a security interest on property of the debtor's estate. . . .  It therefore follows that it is impossible for the claims to be secured by having an interest in something that is not property of the estate. . . .  [Claimants] have not asserted anything that comes close to establishing a *prima facie* case for these being secured claims."  (Tr. of Nov. 4, 2015 Hr'g, 25:18-26:8, Bankr. Doc. No. 13064.)

Claimants appealed from the entry of the Reclassification Order.  On September 30, 2019, the District Court affirmed this Court's ruling.  *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, No. 15 Civ. 09670 (PGG), 2019 U.S. Dist. LEXIS 170606 (S.D.N.Y. Sept. 29, 2019).  The District Court specifically rejected Claimants' argument that their claims were entitled to secured status pursuant to section 541(b)(7).  *Id.* at 11-12.  The District Court stated that a finding that section 541(b)(7) applied would result in Claimants holding "an interest in the property at issue that is superior to a secured claim" and "a party cannot have a secured claim in property of the debtor if the property at issue is not the debtor's."  *Id.* (internal citations omitted).  Claimants appealed the District Court's decision to the Second Circuit.  *344 Individuals v. Giddens (In re Lehman Bros. Inc.)*, Case No. 19-3245 (2d Cir.).  No decision has yet been rendered.

## V.    The Adversary Proceeding

The ESEP Committee filed the complaint (the "Complaint") initiating this adversary proceeding on October 7, 2019.  (Doc. No. 1.)  The ESEP Committee seeks a declaratory judgment that 11 U.S.C. § 541(b)(7) removes "the deferred compensation [Claimants] were entitled to receive under the ESEP plan" from the LBI estate and asks this Court to award to Claimants "the amounts of the deferred compensation pension accruals in connection with the ESEP plan for each of the [Claimants] through the time of LBI's bankruptcy," together with interest, costs, and fees.  (Complaint ¶¶ 11, 21)

On November 6, 2019, the Trustee filed the Motion to Dismiss, arguing that the Complaint should be dismissed as untimely under the applicable statute of limitations, barred under the equitable doctrine of laches, and dismissed on the merits for failure to state a claim. (Doc. No. 5.)  The ESEP Committee filed the Motion for Summary Judgment on December 23, 2019, asserting that the claims stated in the Complaint were not subject to any statute of limitations and therefore were not barred; opposing the defense of laches and asserting that the Trustee's defense relies on facts outside the Complaint and therefore cannot be resolved on a motion to dismiss; and seeking summary judgment in its favor on the issue of section 541(b)(7)'s applicability to the Claimants' pre-petition contributions to the ESEP.  (Doc. No. 10.)  The ESEP Committee also filed its Statement of Undisputed Facts.  (Doc. No. 11.)  The Trustee filed its Reply on January 21, 2020, responding to the ESEP Committee's objection and opposing the Motion for Summary Judgment.  (Doc. No. 17.)  The Trustee also filed its Response to Statement of Undisputed Facts.  (Doc. No. 18.)[5]

---

[5]    The parties agree on the following two statements:

"The Pension Parties are former Shearson Lehman Bros. Inc. ("Shearson") employees who participated in an Executive and Select Employees Deferred Compensation Plan.  See ECF No. 14129, at ¶1."

On February 19, 2020, a hearing was held on the Trustee's Motion to Dismiss and the

ESEP Committee's Motion for Summary Judgment, and the matter was taken under advisement.

(Tr. of Feb. 19, 2020 Hr'g, Doc. No. 28.)

## DISCUSSION

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), made

applicable here through Federal Rule of Bankruptcy Procedure 7012, "a complaint must contain

sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

570 (2007)).  A complaint may be dismissed under Rule 12(b)(6) because it is barred by an

applicable statute of limitations, *Ghartey v. St. John's Queens Hosp.*, 869 F.2d 160, 162 (2d Cir.

1989) (holding that where "the dates in a complaint show that an action is barred by a statute of

limitations, a defendant may raise the affirmative defense in a pre-answer motion to dismiss"), or

on the basis of laches, *Zuckerman v. Metro. Museum of Art*, 928 F.3d 186, 193 (2d Cir. 2019)

(holding that "laches may be decided as a matter of law when the [plaintiff's] lack of due

diligence and prejudice to the [defendant] are apparent") (citation omitted).

## I.    The Complaint Fails on the Merits

### A.  Section 541(b)(7) Does Not Remove Contributions to the ESEP from the Estate

The ESEP Committee seeks a declaration that the deferred compensation the Claimants

"contributed" to the ESEP prior to the commencement of the LBI SIPA proceeding is not

property of LBI's estate by operation of section 541(b)(7) of the Bankruptcy Code.  The Trustee

responds that a careful reading of section 541(b)(7), the applicable provisions of ERISA, and

relevant caselaw require the opposite conclusion.  The Court agrees.

---

"In 1985, each of the Pension Parties entered into the Executive and Select Employees Deferred
Compensation Agreements (the "ESEP Agreements") with Shearson, each in the form annexed as Exhibit 1 to the
Declaration of Richard J.J. Scarola, dated December 23, 2019. See also ECF No. 14129, at ¶2."

The explicit language of the ESEP Agreements makes clear that the ESEP was a top hat plan. (*See* ESEP Agreements §9(i).).  As discussed, *supra*, a top hat plan is "a plan which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees."  29 U.S.C. §§ 1051(2), 1081(a)(3), 1101(a)(1).  One of the benefits of an unfunded top hat plan is that, by deferring the payment of compensation, participants can also defer the payment of taxes on the deferred amounts (and on accrued interest) until retirement, when the participant is in a lower tax bracket.  *See Accardi v. IT Litig. Tr.* (*In re IT Grp., Inc.*), 448 F.3d 661, 664 (3d Cir. 2006), *as amended* (July 10, 2006).  The valuable benefit of deferring taxes on income can only be obtained, however, by assuming the risks associated with the plan's unfunded status.

Being exempt from the funding requirements of title I of ERISA, the assets of a top hat plan are part of "the general assets of the employer."  *See Gallione v. Flaherty*, 70 F.3d 724, 725 (2d Cir. 1995).  In order to achieve the purpose of tax deferral, the compensation deferred under top hat plans, as part of the employer's general assets, remains subject to the claims of the employer's general unsecured creditors in the event of the employer's insolvency.  *In re IT Grp., Inc.*, 448 F.3d at 665; *see also Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 287 (2d Cir. 2000) (a top hat plan is "unfunded" where the participants have no greater legal right to a specific set of funds than any unsecured creditor); *In re Silicon Graphics, Inc.*, 363 B.R. 690, 696-697 (Bankr. S.D.N.Y. 2007) (a top hat plan is "unfunded" where assets used to pay the deferred compensation are subject to the claims of the employer's creditors).[6]

---

[6]    Beneficiaries of an unfunded top hat plan do not have legal rights "greater than that of an unsecured creditor to a specific set of funds from which the employer is, under the terms of the plan, obligated to pay the deferred compensation."  *Demery*, 216 F.3d at 287.  A top hat plan beneficiary "is not subject to tax on the compensation until he or she actually receives the deferred amount precisely because 'the employee may never receive the money if the company becomes insolvent.'"  *In re IT Grp., Inc.*, 448 F.3d at 665; *see also Reliable Home Health Care, Inc. v. Union Cent. Ins. Co.*, 295 F.3d 505, 513–15 (5th Cir. 2002).

Top hat plans are subject to ERISA's administrative and enforcement provisions but are "exempted from ERISA's requirements relating to vesting, participation, fiduciary responsibilities and funding." *In re New Century Holdings, Inc.*, 387 B.R. 95, 110 (Bankr. D. Del. 2008); *Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d 101, 108 (2d Cir. 2008) (same). Stated differently, top hat plans are subject to the procedural safeguards of ERISA, but not to its substantive provisions. The reason for this departure has been explained in a Department of Labor advisory opinion as follows:

> [I]n providing relief for "top-hat" plans from the broad remedial provisions of ERISA, Congress recognized that certain individuals, by virtue of their position or compensation level, have the ability to affect or substantially influence, through negotiation or otherwise, the design and operation of their deferred compensation plan, taking into consideration any risks attendant thereto, and, therefore, would not need the substantive rights and protections of Title I.

Opinion No. 90-14 A (E.R.I.S.A.), 1990 WL 123933, at *1 (Dep't of Labor May 8, 1990).

Section 541(b)(7) of the Bankruptcy Code was enacted on April 20, 2005, as part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA"), Pub. L. No. 109-8, § 323, 119 Stat. 23 (2005).[7] In support of their argument that section 541(b)(7) applies to exclude the ESEP amounts from the LBI estate, Claimants cite to the portion of section 541(b)(7) which excludes from property of the estate funds that are either (a) "withheld by an employer from the wages of employees for payment as contributions" to "an employee benefit plan that is subject to title I" of ERISA or (b) "received by an employer from employees for payment as contributions" to "an employee benefit plan that is subject to title I" of ERISA. 11 U.S.C. § 541(b)(7)(A)(i)(I), (B)(i)(I). Because, Claimants assert, the ESEP was a benefit plan subject to

---

[7] The Court has been provided with no legislative history or other information supporting the assertion that Congress intended section 541(b)(7) to affect top hat plans or render them inconsistent with the requirements of the Internal Revenue Code for an individual to defer income taxes.

portions of title I of ERISA, they claim that section 541(b)(7) excludes from property of LBI's estate the deferred compensation contributed to the ESEP.

Were the ESEP Committee's interpretation of section 541(b)(7) correct, it would create a conflict between the Bankruptcy Code, on the one hand, and federal tax and ERISA law, on the other hand.  Stated differently, applying section 541(b)(7) to an unfunded top hat plan like the ESEP would, as the Trustee correctly points out, "nullify the ERISA and tax code provisions that make top hat plans possible." (Motion to Dismiss, p. 22.)  As discussed *supra*, a central feature of a top hat plan such as the ESEP is its unfunded status, which, by being exempt from the substantive provisions of ERISA, is distinct from a "funded" plan, in which the plan's assets must be segregated from the general assets of the employer.[8]  With an unfunded top hat plan, at the time of income deferral, the participant is not considered to have received any money or property; the Internal Revenue Code explicitly excludes from the definition of property for purposes of assessing taxable income "an unfunded and unsecured promise to pay money or property in the future."  *See* 26 C.F.R. § 1.83-3(e); *Miller v. Heller*, 915 F. Supp. 651, 659 (S.D.N.Y. 1996).  Accordingly, income deferred under an unfunded top hat plan, unlike funds paid into a plan covered by the substantive provisions of title I of ERISA, is not held in a "constructive trust" for the benefit of participants, because "there is no nexus or property identifiably belonging to the [p]lan [p]articipants on which a constructive trust can be placed. . . ."  *In re Washington Mut., Inc.*, 450 B.R. 490, 504 (Bankr. D. Del. 2011).

---

[8]    In contrast to an "unfunded" plan, a plan that is subject to both the procedural and substantive rights and protections of ERISA, is a "funded" plan, and "the plan assets must be "segregated from the general assets of the employer [such that the assets] are not available to general creditors if the employer becomes insolvent." *Northwestern Mut. Life Ins. Co. v. Resolution Tr. Corp.*, 848 F. Supp. 1515, 1517 (N.D. Ala. 1994); *see also Dependahl v. Falstaff Brewing Corp.*, 653 F.2d 1208, 1214 (8th Cir. 1981) ("Funding implies the existence of a res separate from the ordinary assets of the corporation.").

If section 541(b)(7) did in fact remove the contributions to unfunded top hat plans from the reach of creditors, it would effectively undo the tax-exempt status of such contributions, upsetting the function and tax structure of top hat plans. The purpose of unfunded top hat plans – income tax deferral – depends on the deferred compensation remaining subject to the claims of unsecured creditors. Nothing in the language of the statute or the legislative history of BAPCPA supports the conclusion that section 541(b)(7) was intended to treat top hat plans in bankruptcy in a manner inconsistent with the requirements of the Internal Revenue Code for deferred taxation, and the Court declines to do so here. As the Supreme Court has directed, "when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari*, 417 U.S. 535, 551 (1974); *see also SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharm., Inc.*, 211 F.3d 21, 27–28 (2d Cir. 2000) ("where two laws are in conflict, courts should adopt the interpretation that preserves the principal purposes of each").

Further, as explained by the Trustee in the Motion to Dismiss and in the Reply, numerous courts addressing the issue have held that section 541(b)(7) does not apply to unfunded top hat plans such as the ESEP. As one court explained:

> To exclude the assets of an unfunded plan from property of the estate and remove those assets from the reach of general unsecured creditors would therefore fly in the face of the very purpose, structure and function of a top hat plan. It would place 11 U.S.C. § 541(b)(7) at odds with ERISA and essentially nullify a top hat plan in the bankruptcy context. It would upend the policy of ERISA and the tax law that the deferred amounts in a top hat plan remain part of the general assets of the company subject to the claims of its general creditors.

*In re The Colonial BancGroup, Inc.*, 436 B.R. 695, 712 (Bankr. M.D. Ala. 2010) ("*In re The Colonial BancGroup I*") (concluding that plan assets were not excluded from property of the estate pursuant to section 541(b)(7)). Certain of these courts have based their reasoning on the

15

fact that income deferred under a top hat plan is not "withheld" by an employer or "received" by an employee" within the meaning of section 541(b)(7). *See Korneff v. Downey Reg'l Med. Ctr. Hosp., Inc.* (*In re Downey Reg'l Med. Ctr. Hosp., Inc.*), 441 B.R. 120, 131 (B.A.P. 9th Cir. 2010) (affirming bankruptcy court's determination that deferred compensation in a top hat plan was not "withheld" from wages as required by section 541(b)(7) and, therefore whether the plan was "subject to" ERISA was of no import); *Synovus Tr. Co. v. Bill Heard Enter., Inc.* (*In re Bill Heard Enter., Inc.*), 419 B.R. 858, 867–68 (Bankr. N.D. Ala. 2009) (holding that a deferral is neither a withholding by an employer nor an amount received by an employer from employees, as the employee has no present entitlement to the income).

The sole case cited by the ESEP Committee in support of its interpretation of section 541(b)(7), *see* Motion for Summary Judgment, pp. 28-29 (citing *In re Twin City Hospital*, No. 10-64360, 2011 WL 2946172 (Bankr. N.D. Ohio July 21, 2011), is distinguishable from the instant case. *Twin City* addresses the application of a different subsection of section 541(b)(7), which subsection specifically removes from the estate contributions to a "deferred compensation plan under section 457 of the Internal Revenue Code of 1986." 11 U.S.C. § 541(b)(7)(A)(i)(II), (B)(i)(II). Here, the ESEP Committee's argument under section 541(b)(7) relies on subsections (A)(i)(I) and (B)(i)(I), neither of which contains any reference to top hat plans. The ESEP Committee fails to cite any additional caselaw that persuasively establishes that section 541(b)(7) (A)(i)(I) and (B)(i)(I) exclude the ESEP amounts from property of the estate.

The express contractual language governing the ESEP, which language was agreed to by the Claimants, also confirms that compensation deferred under the ESEP is part of the capital of LBI and remains subject to the claims of its creditors in the event of insolvency. As described *supra*, the ESEP Agreements expressly provide that "[t]he amounts credited to the deferred compensation account hereunder shall be dealt with in all respects as capital of [LBI] [and] shall

16

be subject to the risks of the business." (ESEP Agreements § 9(i).) The ESEP Agreements also provide that each of the Claimants irrevocably agrees that the deferred compensation payments "are and shall be subordinate in right of payment and subject to the prior payment or provision for payment in full of all claims of all other present and future creditors of [LBI] whose claims are not similarly subordinated." (*Id.* § 9(d).). Each Claimant agreed that any future payments made to him or her under the ESEP Agreements were "unsecured subordinated obligations of [LBI] only," and that he or she is "only a general subordinated creditor of [LBI] in that respect." (*Id*. § 5(d).)

Finally, the Court observes that, even if Claimants were to prevail on their request for a declaratory judgment that the ESEP amounts are not property of the LBI estate, this declaration alone would not provide them with an ownership right in the ESEP amounts. Where applicable, section 541(b)(7) excludes property from the estate, but it does not create ownership rights. As the Trustee correctly asserts, "[e]ven if section 541(b)(7) applies to ESEP deferred compensation – which . . . it does not – Claimants would have to establish an independent right to those amounts." (Motion to Dismiss, p. 26 (citing *In re The Colonial BancGroup I*, 436 B.R. at 712 (concluding that even if "plan assets were excluded from property of the estate, it would not give the plan participants any greater claim to the funds than they now have")).) Claimants have failed to establish that section 541(b)(7) creates a legal entitlement to the ESEP amounts (or to interest, costs, and fees), and the Court declines to accept Claimants' unsupported assertion that a declaration that section 541(b)(7) applies would create rights to the ESEP amounts independent of the ESEP Agreements. Courts considering this issue have reached the same result. *See In re Downey*, 441 B.R. at 131 (where deferred compensation plan provides that the participants have no ownership interest in the funds, "removing the plan funds from the estate would not establish ownership in the participants"); *Rosen v. Chowaiki & Co. Fine Art Ltd. (In re Chowaiki & Co.*

17

*Fine Art)*, 593 B.R. 699, 718 (Bankr. S.D.N.Y. 2018) ("a declaratory ruling under § 541(d), by

itself, would not impart any equitable interest in the [disputed assets] to [Claimant]") (internal

citations omitted); *In re Expert S. Tulsa, LLC*, 456 B.R. 84, 88 (Bankr. D. Kan. 2011)

(determining that funds held in escrow were outside the bankruptcy estate and that plaintiffs had

to pursue their rights under the relevant escrow agreement to seek return of the funds), *aff'd*, 522

B.R. 634 (B.A.P. 10th Cir. 2014), *aff'd*, 619 F. App'x 779 (10th Cir. 2015). As the Court has

already determined that the Complaint must be dismissed on the merits, the Court need not

determine whether Claimants are correct regarding ownership. The Court observes, however,

that Claimants' litigation over the past six years has left them with, at most, a contractual claim

under the ESEP Agreements that is subordinate to the claims of LBI's general creditors, which

differs greatly from a right to payment of the ESEP funds to which they now assert an

entitlement.[9]

Under the terms of the ESEP Agreements, deferred compensation directed to the ESEP

by the Claimants is part of LBI's estate and remains subject to the claims of LBI's general

creditors. For all of the foregoing reasons, Section 541(b)(7) does not apply to unfunded top hat

plans such as the ESEP to exclude deferred compensation contributed to the ESEP from the LBI

bankruptcy estate or remove such amounts from the reach of LBI's creditors. The Court

concludes that the Complaint fails to state a claim upon which relief can be granted and,

accordingly, should be dismissed on the merits.

---

[9]    The Trustee states, persuasively, that "Claimants' own actions also undercut their claim to ESEP amounts," as Claimants have not asserted that they paid taxes on any ESEP amounts that they now claim to own, which weighs against their argument that the ESEP funds are their property. (Reply, p. 16 (citing *In re Cheeks*, 467 B.R. 136, 154 (Bankr. N.D. Ill. 2012) ("Even if it could be argued that Trust funds in this case were segregated from CFMC's general assets, Plaintiff still could not establish any proprietary interest in the Trust's funds because Plaintiff did not treat the funds as his property for tax purposes.").)

## II.    The Complaint is Barred by the Statute of Limitations

Section 1658(a) of title 28 of the United States Code provides for a four-year statute of limitations to cases arising under federal law when no other statute of limitations applies.  The statute provides that "[e]xcept as otherwise provided by law, a civil action arising under an Act of Congress enacted after the date of the enactment of this section may not be commenced later than 4 years after the cause of action accrues."  28 U.S.C. § 1658(a).  The statute was enacted in order to create a uniform statute of limitations applicable to federal causes of action and eliminate the previous piecemeal practice of adopting a local statute of limitation where no applicable federal statute of limitations existed.  *Jones v. R.R. Donnelly & Sons Co.*, 541 U.S. 369, 377–84 (2004).

Section 1658(a) was enacted on December 1, 1990, and it applies to actions arising under federal laws enacted after that date.  Where a federal law was first enacted prior to December 1, 1990, but amended after that date, the four-year statute of limitations applies to cases arising under the amended portions of the statute "if the plaintiff's claim against the defendant was made possible by [the] post-1990 enactment."  *Jones*, 541 U.S. at 382.

The statute of limitations applicable to declaratory judgment actions is the limitation applicable to the underlying cause of action.  *See 118 E. 60th Owners, Inc. v. Bonner Props., Inc.*, 677 F.2d 200, 202 (2d Cir. 1982) ("What determines the applicable limitations period is 'the basic nature of the suit in which the issues involved would have been litigated if the Declaratory Judgment Act had not been adopted.'") (quoting *Romer v. Leary*, 425 F.2d 186 (2d Cir. 1970)).  Here, the Complaint seeks declaratory relief under 28 U.S.C. § 2201 based solely on 11 U.S.C. § 541(b)(7).  (*See* Complaint, ¶¶ 21-22.)  As discussed *supra*, Section 541(b)(7) was enacted on April 20, 2005, as part of BAPCPA.

19

Because section 541(b)(7) does not contain its own statute of limitations and because it was enacted in 2005, well after 1990, the Trustee argues that section 1658(a) applies to actions arising under section 541(b)(7).  As to whether the statute of limitations set forth in section 1658(a) has lapsed with respect to the Adversary Proceeding, the Trustee submits that Claimants' cause of action under section 541(b)(7) accrued on the Filing Date, when the LBI bankruptcy estate was formed and Claimants had a complete and present cause of action.  As the Complaint was not filed until more than eleven years after the Filing Date, well beyond the four-year statute of limitations established by section 1658(a), the Trustee asserts that the Adversary Proceeding is time-barred and should be dismissed.

The ESEP Committee opposes the application of the statute of limitations set forth in section 1658(a) by arguing that section 1658(a) only applies to a "civil action," not to an "adversary proceeding." (Motion for Summary Judgment, pp. 46-50.)  Second, the ESEP Committee argues that other parts of the Bankruptcy Code do not have time limits, and, accordingly, no statute of limitations applies to a cause of action under section 541(b)(7).

The Court finds that Claimants have failed to demonstrate that an "adversary proceeding" filed in a bankruptcy court is not a "civil action," such that section 1658(a) would be inapplicable here.  First, as Claimants concede in a footnote, Federal Rule of Bankruptcy Procedure 9002(1) explicitly states that a "'civil action' means an adversary proceeding."  (Motion for Summary Judgment, p. 48, n. 15.)  Further, bankruptcy courts have clarified that civil actions may be labeled "adversary proceedings" by a bankruptcy court. *See*, *e.g.*, *In re Yelverton*, No. 09-00414, 2014 WL 7212967, at *1 (Bankr. D.D.C. Dec. 17, 2014), as amended (Dec. 19, 2014) ("The 'adversary proceeding' label the civil action carries in the bankruptcy court is of no import, as it merely distinguishes the civil action from a 'contested matter' (the other category of civil proceedings tried in the bankruptcy court . . .)"), *aff'd sub nom. United States ex rel. Yelverton v.*

*Fed. Ins. Co.*, 831 F.3d 585 (D.C. Cir. 2016).  Finally, the cases cited by the ESEP Committee in support of its argument are inapposite and do not support its argument in this regard.[10]

The ESEP Committee also has failed to persuade the Court that, simply because certain other provisions of the Bankruptcy Code do not set time limitations, no statute of limitations applies to a cause of action invoking section 541(b)(7).  In support of their assertion, Claimants have not cited to any case addressing section 541(b)(7).  Instead, they cite to cases addressing sections of the Bankruptcy Code enacted prior to 1990 and not subsequently amended in any relevant respect, seemingly ignoring the fact that section 1658(a) applies to actions arising under federal laws enacted after December 1, 1990.  Accordingly, because section 541(b)(7) does not contain its own statute of limitations and because it was enacted in 2005, after the 1990 enactment of 28 U.S.C. § 1658(a), the Court concludes that the four-year statute of limitations contained in section 1658(a) applies to causes of action seeking relief pursuant to section 541(b)(7) of the Bankruptcy Code.

A cause of action is deemed to accrue pursuant to section 1658(a) "when the plaintiff has a complete and present cause of action."  *City of New York v FedEx Ground Package Sys., Inc.*, 351 F. Supp. 3d 456, 475 (S.D.N.Y. 2018) (citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007)).  Here, Claimants' cause of action accrued on September 19, 2008, the date LBI's SIPA proceeding commenced, at which time the LBI bankruptcy estate was formed and Claimants had a complete and present cause of action.  Indeed, the Complaint seeks a determination that

---

[10]    *See, e.g.*, *Oppenheim v. Campbell*, 571 F.2d 660, 662-63 (D.C. Cir. 1978) (holding that while the federal statute of limitations under 28 U.S.C. § 2401(a) would apply to a complaint filed with a court, it did not apply to a claim filed with the Civil Service Commission, an administrative agency); *Official Employment-Related Issues Comm. Of Enron Corp. v. Arnold (In re Enron Corp.)*, 317 B.R. 701, 706 (Bankr. S.D. Tex. 2004) (concluding that 28 U.S.C. § 1391 and other nonbankruptcy venue statutes are applicable in bankruptcy cases only to the extent provided by bankruptcy venue statutes); *In re Salau*, No. CV 1:15-11080, 2016 WL 183704, at *2 (S.D.W. Va. Jan. 14, 2016) (distinguishing Federal Rule of Bankruptcy Procedure 7004, which governs service of process in actions filed in bankruptcy court, from Federal Rule of Civil Procedure 4, which governs actions filed in a district court); *In re Lindsey*, 177 B.R. 748, 749 (Bankr. N.D. Ga. 1995) (same).

21

accruals under the ESEP "through the time of LBI's bankruptcy filing" are not part of the LBI

estate.  (Complaint, ¶¶ 7, 21.).  As the Complaint was not filed until more than eleven years after

the Filing Date, well beyond the four-year statute of limitations established by section 1658(a),

the relief sought by the Adversary Proceeding is time-barred.

Even if the Complaint was not subject to dismissal on the merits for failure to state a

claim upon which relief can be granted, the Complaint is barred by the statute of limitations and

must be dismissed.

### III.   The Complaint is Barred by Laches

Although the Complaint must be dismissed on the merits and because it is time barred,

the extraordinary undisputed facts present here support dismissal of the Complaint as a matter of

law based on the doctrine of laches.

The equitable doctrine of laches prohibits "unreasonable, inexcusable and prejudicial

delay." *Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC*, 491 B.R. 27, 32–35

(S.D.N.Y. 2013), *aff'd sub nom. Picard v. Fairfield Greenwich Ltd.*, 762 F.3d 199 (2d Cir.

2014).  The doctrine of laches is particularly important in bankruptcy, where "the chief purpose"

is to "secure a prompt and effectual administration and settlement of the estate."  *Gazes v.

DeArakie (In re DeArakie)*, 199 B.R. 821, 827 (Bankr. S.D.N.Y. 1996) (quoting *Crosby v. Mills*,

413 F.2d 1273, 1276 (10th Cir. 1969)); *see also In re Dini*, 566 B.R. 220 (Bankr. N.D. Ill. 2017)

(holding that laches barred creditor's motion to dismiss chapter 7 bankruptcy case where creditor

had inexcusably delayed for two years after learning of the basis for its motion).

There are two elements to a laches defense.  "A party asserting a laches defense must

show that the plaintiff has inexcusably slept on its rights so as to make a decree against the

defendant unfair" and "that [defendant] has been prejudiced by the plaintiff's unreasonable delay

in bringing the action."  *Zuckerman v. Metro. Museum of Art*, 928 F.3d at193 (quoting *Merrill*

*Lynch Inv. Managers v. Optibase, Ltd.*, 337 F.3d 127, 132 (2d Cir. 2003)); *see also Conopco, Inc. v. Campbell Soup Co.*, 95 F.3d 187, 192 (2d Cir. 1996) (holding that a defendant had been prejudiced when "the assertion of a claim available some time ago would be 'inequitable' in light of the delay in bringing the claim"). These two elements are integrally related and must be weighed together. "Where there is no excuse for delay . . . defendants need show little prejudice." *Stone v. Williams*, 873 F.2d 620, 625 (2d Cir. 1989), *vacated on other grounds*, 891 F.2d 401 (2d Cir. 1989). Under appropriate circumstances, laches may be decided as a matter of law and a court may dismiss a complaint at the pleading stage. *Zuckerman*, 928 F.3d at 193 (concluding that "laches may be decided as a matter of law when the [plaintiff's] lack of due diligence and prejudice to the [defendant] are apparent").

To begin, the Court takes judicial notice of Claimants' Claims and of their previous public filings during the many years of litigation which Claimants have pursued against the LBI estate with respect to such claims. *See Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 424–25 (2d Cir. 2008) (concluding that the district court did not abuse its discretion where it took judicial notice of certain assertions that had been made in other lawsuits). After reviewing the uncontroverted history of protracted litigation pursued by the Claimants in the LBI SIPA proceeding, the inexcusable delay of the Claimants in bringing this Adversary Proceeding and the prejudice to other creditors of the LBI estate are apparent here.

The Claims filed by Claimants in 2009 were premised upon Claimants' status as creditors of the estate; as discussed *supra*, the large majority of the Claims asserted that they were secured claims based upon section 541(b)(7). As a result, the Claimants and the Trustee have been litigating for six years about the priority of such Claims – whether, among other things, the Claims are (i) secured claims, (ii) unsubordinated general creditor claims, or (iii) subordinated general creditor claims – but never whether the Claims are in fact claims against property which

is not property of the LBI estate at all.[11]  During the entirety of that litigation, notwithstanding their 2009 invocation of section 541(b)(7), Claimants have never argued to this Court that the ESEP amounts they were seeking are not part of the LBI estate or that Claimants are not creditors of the estate.

It is crystal clear that, since the time the Claims were filed, Claimants were aware of section 541(b)(7) of the Bankruptcy Code.  As the Trustee points out, Claimants relied on section 541(b)(7) to argue that it gave them a secured claim to funds *within* the estate, a suggestion that both this Court and the District Court found meritless, and which issue the Claimants have now appealed to the Second Circuit by their appeal of this Court's November 10, 2015 Reclassification Order, as discussed *supra*.  (*344 Individuals v. Giddens (In re LBI)*, Case No. 19-3245 (2d Cir.).)  The issue before the District Court, and now the Second Circuit, is premised on Claimants' allegation that they have a claim to property that is included in the LBI estate.  Claimants' multi-year delay in attempting to utilize section 541(b)(7) to now argue a directly contrary position – that the ESEP amounts were improperly included in the LBI estate – is inexcusable.

The Court recognizes that a litigant is permitted to plead in the alternative and to posit different theories of recovery.  But that does not translate into an entitlement to engage in costly and protracted Dickensian litigation.  Here, since the filing of the Claims over a decade ago, Claimants have steadfastly asserted that they are creditors of the estate and that they have a claim to approximately $270 million in estate property.  Now, for the first time, and after losing in this Court, the District Court, and the Court of Appeals, Claimants seek, through the Adversary Proceeding, a declaratory judgment that the ESEP amounts – the estate property to which the

---

[11]   Claims are only allowable if they are enforceable against "property of the debtor." See, e.g., 11 U.S.C. § 502(b)(1). Likewise, a secured claim is, by definition, "secured by a lien on property in which the estate has an interest." 11 U.S.C. § 506(a)(1).

Claims lay claim – are not property of the estate.  There is no reasonable justification for their

prolonged failure to make this argument since the time they filed the Claims in 2009.

In addition, as the Trustee highlights in the Motion to Dismiss, Claimants also did not

raise their section 541(b)(7) argument (i) in connection with any of the allocation motions filed

by LBI to allocate LBI estate assets to satisfy customer claims[12]  or (ii) in response to the

numerous distribution motions and orders that created claims reserves from the funds in the LBI

estate and distributed funds then deemed part of the LBI estate to customers and creditors.[13]

(Motion to Dismiss, p. 14.)  Courts have held that the doctrine of laches bars attempts to assert

ownership rights where, as here, a party has unreasonably delayed taking action to assert such

rights in the face of bankruptcy court orders. *See, e.g., Barbieri v. Barbieri (In re Barbieri)*, 380

B.R. 284, 297 (Bankr. E.D.N.Y. 2007) (dismissing adversary proceedings seeking declaration

that plaintiff was the true owner of certain property pursuant to laches and waiver where plaintiff

had delayed taking action to assert ownership and did not raise ownership interest during asset

sale proceedings).  Claimants' untimely delay in asserting their argument that the ESEP amounts

are not property of the estate cannot be countenanced.  *See, e.g.*, *In re Huffman*, No. 06-50096,

2007 WL 4212292, at *3 (Bankr. D.S.D. Nov. 27, 2007) (stating that "[t]he time for [the

claimant] to argue a portion of the [funds] was not property of the estate was much earlier in the

case" and dismissing party's claim to ownership of assets held by estate).

Moreover, Claimants' inexcusable delay in asserting their section 541(b)(7) argument has

significantly prejudiced the Trustee and creditors of the LBI estate.  First, Claimants have been

litigating against the Trustee for six years regarding the priority of the Claims, at significant

---

[12]      Bankr. Doc. Nos. 1866 (noting that the Trustee "expects that most of the LBI Estate will be allocated to
Customer Property"), 2743, 4760, 6023.
[13]      Bankr. Doc. Nos. 8885, 9273, 9246, 9520, 11147, 11358, 12478, 12579, 13642, 13683, 14162, 14210,
14568, 14595, 14596, 14605.

expense to the estate.  The Trustee submits that, had Claimants raised their 541(b)(7) argument in a more timely manner during the six years of litigation regarding the ESEP amounts, "these issues could have been litigated in tandem, which would have been more efficient, and, of course, would have led to a much more timely final resolution of the issues."  The Court agrees. *See Sec. Inv'r Prot. Corp. v. Bernard L. Madoff Inv. Sec. LLC (In re Madoff Sec.)*, 491 B.R. at 34-35 (finding prejudice where delay in filing action caused defendants to engage in litigation for three years that might have been avoided if action had been timely-filed); *In re Dini*, 566 B.R. at 232 (finding prejudice where debtor was exposed to prolonged uncertainty about his legal rights and forced to incur significant litigation expenses which potentially could have been avoided if creditor had not delayed).

In addition to prejudice resulting from the additional, significant litigation expenses which could have been avoided had the Claimants not delayed at least six years in asserting this new cause of action, the Trustee has articulated a second form of prejudice here.  The Adversary Proceeding and Claimants' pending Second Circuit appeal are the only remaining open matters in the LBI SIPA proceeding.  (*See*, *e.g.*, Bankr. Doc. No. 14905 (April 30, 2019 letter from Trustee informing the Court that, upon final resolution of the pending ESEP claims matters, the Trustee will immediately seek Court approval for a final distribution and other closing procedures).)  Stated differently, Claimants' delay in raising a new argument directly contrary to their prior position as creditors of the estate impedes the ability of the Trustee to move forward with closing the LBI estate.  Keeping the estate open causes the Trustee to incur substantial operational costs that are separate and apart from litigation costs.  (*See id.*). Such costs are detrimental to other creditors of the estate, as they reduce the total funds available for distribution and the amounts that creditors will ultimately receive.  The delay in closing the LBI

26

estate also prejudices these creditors, as it forces them to wait additional time for final distributions in an otherwise fully-administered case that was commenced over eleven years ago.

For all of these reasons, the Court finds that Claimants' inexcusable delay has caused significant prejudice to the LBI estate, its creditors, and the Trustee, and holds that the doctrine of laches, as a matter of law, mandates dismissal of the Adversary Proceeding.

## CONCLUSION

For all of the reasons stated herein, the Trustee's Motion to Dismiss is granted. The ESEP Committee's Motion for Summary Judgment is denied as moot. Any other arguments made by the ESEP Committee and not specifically addressed in this Memorandum Opinion and Order are hereby overruled.

IT IS SO ORDERED.


Dated: New York, New York
        June 15, 2020

                              /s/ Shelley C. Chapman
                              SHELLEY C. CHAPMAN
                              United States Bankruptcy Judge